UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOY GARDINER,                                          Civil Action No.: 1:14-cv-01966

                              Plaintiff,

                  -against-                            **AMENDED**
                                                      **CLASS ACTION COMPLAINT**

NETWORK COMMERCIAL SERVICE, INC.                       **DEMAND FOR JURY TRIAL**
and LAW OFFICES OF SIEGEL & SIEGEL,

                              Defendant(s).
-----------------------------------------------------------------X

       Plaintiff JOY GARDINER, ("Plaintiff"), by and through her attorneys, The Law Office of Alan J. Sasson, P.C., as and for its Complaint against the Defendants, NETWORK COMMERCIAL SERVICE, INC. and LAW OFFICES OF SIEGEL & SIEGEL (hereinafter referred to as "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## INTRODUCTION/PRELIMINARY STATEMENT

       1.    Plaintiff brings this action on her own behalf for damages and declaratory and injunctive relief arising from the Defendant's violation(s) of §1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act .

## PARTIES

       2.    Plaintiff JOY GARDINER is a resident of the State of New York, residing at 130 West 142nd Street, Apartment 4-G, New York, New York 10030.

       3.    Defendant NETWORK COMMERCIAL SERVICE, INC. is a California Corporation engaged in the business of debt collection with its business address at 6355 Topanga Canyon Boulevard, Suite 255, Woodland Hills, CA 91367.

4.      Defendant LAW OFFICES OF SIEGEL & SIEGEL is a California Corporation engaged in the business of debt collection with its business address at 6355 Topanga Canyon Boulevard, Suite 255, Woodland Hills, CA 91367.

5.      The Plaintiff is a "consumer" as the phrase is defined and used in the FDCPA under 15 USC §1692a(3).

6.      Defendant is a "debt collector" as the phrase is defined and used in the FDCPA under 15 USC §1692a(6).

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 USC §1331, as well as 15 USC §1692 *et seq.* and 28 U.S.C. §2201.  If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. §1367(a).

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## ALLEGATIONS FOR CLASS ACTION

9.      Plaintiff brings this action as a class action, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of herself and all persons/consumers, along with their successors-in-interest, who have received similar debt collection notices and/or letters/communications from Defendant which, as alleged herein, are in violation of the FDCPA, as of the date of Plaintiff's Complaint (the "Class").  Excluded from the Class is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant is impracticable. Upon information and belief, hundreds of persons have received debt collection notices and/or letters/communications from Defendant, which violate various provisions of the FDCPA.

10.     This Class satisfies all the requirements of FRCP Rule 23 for maintaining a class action.

11.     The Class is so numerous that joinder of all members is impracticable. Upon information and belief, hundreds of persons have received debt collection notices and/or letters/communications from Defendant, which violate various provisions of the FDCPA.

12.     The debt collection notices and/or letters/communications from Defendant, received by the Class, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer".

13.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation: (i) Whether Defendant violated various provisions of the FDCPA; (ii) Whether Plaintiff and the Class have been injured by Defendant's conduct; (c) Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and, (iv) Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

14.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

15.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, this being specifically envisioned by Congress as a principal means of enforcing the FDCPA, as codified by 15 U.S.C. § 1692(k).

16.     The members of the Class are generally unsophisticated individuals, whose

rights will not be vindicated in the absence of a class action.

17.     Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

18.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

19.     Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

20.     Absent a class action, the Class members will continue to suffer losses borne from Defendant's breaches of their statutorily protected rights as well as monetary damages, thus allowing and enabling:   (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

21.     Defendant has acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.


## **FACTUAL ALLEGATIONS**

22.      Plaintiff repeats, reiterates and incorporates the allegations contained in

paragraphs numbered "1" through "21" herein with the same force and effect as if the same were set forth at length herein.

23.     Upon information and belief, Defendant, on behalf of a third-party, began efforts to collect an alleged consumer debt from the Plaintiff.

24.     Upon information and belief, and better known to the Defendants, Defendants began their campaign of communications with the Plaintiff by instructing and/or allowing their employee identified as "Sam Gardner" of Defendant NETWORK COMMERCIAL SERVICE, INC. (hereinafter "NETWORK") to place a telephone call to Plaintiff on August 13, 2013 and request Plaintiff's electronic mailing address "for their files." Plaintiff provided the requested information.

25.     On the same day, August 13, 2013, Plaintiff received an electronic communication from Defendants to e-mail address jgardiner1989 (at) yahoo.com (herein attached as Exhibit "A"), which communication included an attachment. Said attachment consisted of two pages, the first being a cover letter with an address typed at the top of the letter where a professional masthead would ordinarily go, attributing the letter to NETWORK and stating the following: "Pursuant to your request, transmitted herewith is a copy of the documents we discussed. Review and contact me immediately to arrange for payment of the balance owed. Thank you for your cooperation in resolving this matter."  The letter was signed, "Sincerely, Sam Gardner, *Collection Associate*."

26.     Beneath Sam Gardner's name, NETWORK typed the following:   "NOTE: Creditor shall not be deemed to have waived or be estopped from enforcing any provision for timely payment set forth herein be [sic] accepting any late payment or by

accepting any payment not in the amount prescribed above. This transmittal is intended

only for the use of the individual or entity to which it is addressed, and may contain

information that is priveleged [sic]  and confidential. If the reader of this transmission is

not the intended recipient, you are hereby notified that any copying, dissemination, or

distribution of this communication is strictly prohibited. If you have received this

communication in error, please notify us immediately by phone and return the original

transmission to us."

     27.    The second page of the referenced attachment was a form on which

NETWORK had typed the words, "CREDIT CARD FORM" (attached hereto as Exhibit

"B").  As in the accompanying letter with its misspellings and grammatical errors, said

form was an unofficial appearing and crudely typed word processing document in what

appeared to be Courier 12 pt. typeface, as follows:

```
VISA _____   MASTERCARD _____  AMEX _____  DISCOVER _____
FILE # 0000295944  STV ____(handwritten) 1481587 ON DEMAND
CREDIT CARD # _____
EXPIRATION DATE       _____
EXTENSION #      _____
AMOUNT CHARGED $ 143.68 PIF _____
DEBTOR NAME:      Gardiner, Joy
ADDRESS          130 W 142ND ST #4-G
                 BROOKLYN NY 11230
NAME ON CARD      _____
SPECIAL INSTRUCTIONS     (handwritten)   to pay-in-full
FUTURE PAYMENTS     _____ N/A
SIGNATURE _____  DATE _____
```

```
PRINT NAME _____
```

PLEASE NOTE THAT CREDIT CARD WILL BE PROCESSED BY
LAW OFFICES OF SIEGEL & SIEGEL

(*handwritten*) SAM

28.     The above electronic communication was transmitted to Plaintiff at Mt. Sinai Hospital, Plaintiff's place of employment, where it was viewed by her supervisor, Michelle Fisher.

29.     On approximately August 19, 2013, Plaintiff received correspondence in the mail dated August 14, 2013 (attached hereto as Exhibit "C"). This letter was printed on what appeared to be professional letterhead bearing NETWORK's name and stated the following: "Please be advised that the above-referenced claim has been placed for collection purposes with [NETWORK]. Your full cooperation will assure proper credit for payment and help to avoid unnecessary steps to enforce recovery. Please contact the account representative listed below for immediate payment opportunities."  This letter was signed, "Sam Gardner, *Collection Specialist.*"

31.     Beneath the aforementioned paragraph was another paragraph containing a brief version of the required 30-day disclosure notice regarding Plaintiff's rights to dispute the alleged debt balance. The third and final paragraph contained language, the substance of which was" The state [sic] Rosenthal Fair Debt Collection Practices Act and Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if

they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your spouse or attorney, about your debt. Collectors may contact another person to confirm your location or enforce a judgment."

32.     On or about August 23, 2013, Plaintiff received correspondence purported to be from Defendant LAW OFFICES OF SIEGEL & SEIGEL (hereinafter "SIEGEL") dated August 19, 2013 (attached hereto as Exhibit "D").

33.     Said correspondence did not bear a legal stationery masthead but SIEGEL's contact information had been unprofessionally typed via word processing in large bold letters which, similar to prior communications from NETWORK, used Courier 12 pt. font throughout the letterhead and body of the letter.  Except for telephone numbers, SEIGEL's contact information was identical to NETWORK's. This letter consisted of the following:

```
    "CLIENT:   NETWORK COMMERCIAL
    ASSIGNOR: [Original creditor's name]
    BALANCE:  $143.90

"With the consent of my client, I am referring this matter to
legal counsel in your city, who may be authorized to initiate
legal proceedings against you. As a result, the principal balance
could be increased by the additional interest, court costs and
possibly, attorney's fees.

If you have an attorney, have him/her contact me immediately. I
will be more than happy to discuss this matter with you or your
attorney. In either case, please contact me before you are served
with legal process.

Please direct your correspondence and communications directly to
my client at (818) 360-6697, 6355 Topanga Canyon Bl., #255,
Woodland Hills, CA 91367, in order to resolve this matter.
```

```
Very truly yours,
LAW OFFICES OF SIEGEL & SIEGEL

EDWIN B. SIEGEL
ATTORNEY AT LAW
Dictated but not read.

Sam Gardner
Agent's Representative"
```

34.     Below the signatures, SIEGEL included a paragraph containing a truncated version of the required 30-day disclosure notice regarding Plaintiff's rights to dispute the alleged debt balance.

35.     In response to the above letter, Plaintiff placed a telephone call to SIEGEL and spoke with a female representative.  After confirming that the office was indeed Defendant SIEGELS's since both Sam Gardner and Edwin B. Siegel, Attorney at Law were listed as signatories of the August 19, 2013 letter, Plaintiff related the information in their correspondence that her matter had been referred "to legal counsel in your city," and asked if this had occurred yet. SIEGEL's representative replied that the person Plaintiff needed to speak with was "Sam Gardner." Plaintiff asked if Mr. Gardner was an attorney and SIEGEL's representative replied that "He is the person that is taking care of your claim. He can help you whatever you need to get help in." Plaintiff responded, "But you said that the case was going to be referred over to a local counsel in my city – was it referred?" SIEGEL's representative replied, "You have to speak to him."

36.     On September 16, 2013, Plaintiff placed a telephone call to NETWORK and asked to speak to Sam Gardner but was instead transferred to a representative who identified himself as "Bob."  Plaintiff inquired, "Hi, Bob, I was wondering when my

account would be sent over to a counsel in my city." After, referring to his computer records, Bob asked Plaintiff, "Do you want it sent over?" Plaintiff responded, "When will it be sent over and who will it be sent to?" Bob replied, "Well, to whom I can't say, that's up to the phoning department – do you want it sent over? For $145? Plaintiff then asked, "By whom?" Bob replied, "Ma'am, you're not answering my question, I don't know by whom, that's not up to me, the question is do you seriously want to be sued for $145?

37.     Plaintiff replied, "If you're going to send it over, that's fine with me." Bob then referred to something on his computer and stated, "It looks like at one time you wanted to resolve it because you had an e-mail---I mean you had a credit card form sent over to you, so okay then why---because that's going to be brought up in--- you know, as evidence so why would you want to be sued?" Plaintiff attempted to answer but Bob interrupted with, "Tell me what the difference is? What's happened over the last month or so?" Plaintiff said, "I just want to know who and when will it be sent," to which Bob shouted, "I DON'T KNOW WHO, MA'AM, I'M NOT AN OWL---I DON'T KEEP SAYING, "WHO!!!!"  Plaintiff thereupon ended the call.

## FIRST CAUSE OF ACTION
### (Violations of the FDCPA)

38.     Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "37" herein with the same force and effect as if the same were set forth at length herein.

39.     Upon information and belief, Defendants NETWORK and SIEGEL, along with their respective employees, "Sam Gardner" and "Bob," partnered together and acted in collusion to commit the violations of the FDCPA addressed in the instant Complaint and,

accordingly, the following Causes of Action apply to both Defendants equally.

40.     15 USC §1692 c(b) prohibits a debt collector from disclosing to unauthorized third parties that they are a debt collector attempting to collect a debt from a consumer.

41.     The Defendants violated 15 USC §1692c (b) by sending an unauthorized electronic communication to Plaintiff's place of business which disclosed to a third party, the Plaintiff's supervisor, Michelle Fisher, that Defendant was a debt collector attempting to collect an alleged debt from Plaintiff.

42.     15 USC §1692 d – preface prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt.

43.     Defendants violated 15 USC §1692 d – preface by allowing, instructing and training their employees in general, and "Bob" in particular, to utilize abusive strategies when communicating verbally with consumers and to collect debts by means of threats, insults, intimidation and offensive conduct.  "Bob" argued with Plaintiff when she attempted to obtain information in response to Defendants' August 19, 2013 letter, interrupting her so as to dissuade her from her request about "counsel in her city," clearly because "Bob" was well aware that no such counsel existed.  "Bob's" entire conversation with Plaintiff was rife with abuse and harassment, asking repeatedly and in an incredulous tone of voice, ""Do you want it sent over? For $145?" and "Do you seriously want to be sued for $145?" and "And now you want to be sued?"  When Plaintiff persisted in her request for information, "Bob" made a frantic last ditch effort to deter Plaintiff by saying, "It looks like at one time you wanted to resolve it because you had an e-mail--I mean you had a credit card form sent over to you, so okay then why---

because that's going to be brought up in--- you know, as evidence so why would you want to be sued?" When Plaintiff quietly repeated her request to know the identity of the attorney in her city that Defendants mentioned in their letter, "Bob" apparently could no longer endure having to maintain Defendants' pretense and shouted, "I DON'T KNOW WHO, MA'AM, I'M NOT AN OWL---I DON'T KEEP SAYING, "WHO!!!!"   Defendants' representative's egregious behavior in discounting Plaintiff's requests, insulting, threatening and yelling at Plaintiff exemplifies clearly the ill-mannered, insolent and abusive methods which Defendants condone in order to succeed at debt collection and encourage their employees to perpetuate the fictions Defendants disseminate in their mass-produced written communications to consumers.

44.     15 USC §1692 e – preface and e (10) prohibit a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of any debt or to obtain information concerning a consumer.

45.     Defendants' copious and wide-ranging violations of 15 USC §1692 e – preface and e (10) include, but are not limited to the following actions:

(A)     Defendants deceived Plaintiff into revealing her e-mail address by pretending that the information was needed "for their files" and immediately thereafter transmitted an e-mail to Plaintiff with the fallacious statement, "Pursuant to your request, transmitted herewith is a copy of the documents we discussed" and ended with, "Thank you for your cooperation in resolving this matter." Plaintiff neither "requested" from nor "discussed" documents or anything else with Defendants and in no way did she "cooperate" with them to resolve anything. Defendants have perpetuated brazen lies both verbally and in writing in order to obtain e-mail contact information to send consumers a

bogus "Credit Card Form" as a part of Defendants' aggressive and unprincipled debt collection policy.

(B)     Defendants created a "CREDIT CARD FORM" which had the appearance of an unofficial, unprofessional, hastily typed word processing document with scrawled enigmatic handwritten phrases inserted such as "to pay-in-full" and "1481587 ON DEMAND" which Defendants claimed falsely was "requested" by Plaintiff and which Defendants knew would never be used to provide credit card information but was sent to consumers, in conjunction with Defendants' letter, to intimidate them as another part of Defendants' overall unscrupulous debt collection strategy.

(C)     Defendants followed up their electronic communication with a letter dated August 14, 2013 which stated, "Your full cooperation will assure proper credit for payment and help to avoid unnecessary steps to enforce recovery." Defendants' use of the words, "enforce recovery" are specious and baseless and used to imply in a devious manner that legal action may be involved.

(D)     In Defendants' letter of August 14, 2013, Defendants inserted a paragraph which it falsely and deceptively attributed to the FDCPA and to the State of California's rules for fair debt practices, i.e., **The Rosenthal Fair Debt Collection Practices Act California Civil Code § 1788 et seq.**  which prohibits: "(b) Communicating information regarding a consumer debt to any member of the debtor's family, other than the debtor's spouse or the parents or guardians of the debtor who is either a minor or who resides in the same household with such parent or guardian, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or his attorney has

consented in writing to such communication." Relying on the least sophisticated consumers' (or, indeed *any* consumers') lack of knowledge regarding California's fair debt practices code, Defendants deceitfully distorted this language to say, "*For the most part*, *collectors may not tell another person, other than your spouse or attorney, about your debt. Collectors may contact another person to confirm your location <u>or enforce a judgment.</u>*" Defendants deceitfully changed the phrase, "<u>obtain</u> a judgment" to "<u>enforce</u> a judgment" in a deliberate attempt to intimidate consumers into believing that they were in danger of legal action.

E.      Defendants falsely designed mass-produced written communications, an example of which is the letter sent to Plaintiff dated August 19, 2013, with no professional masthead but just SIEGEL's name, address and contact information typed at the top of the page, with a reference to, "CLIENT: NETWORK COMMERCIAL" and "ASSIGNOR: [original creditor's name]."  This supposed "client" has an identical address and facsimile number as SIEGEL and is not Defendants' "client," nor is the original creditor an "assignor."  Defendants fail to even provide NETWORK's full company name and the letter contains similar errors, inaccuracies and misrepresentations, including, "By consent of my client, I am referring this matter to legal counsel in your city, who may be authorized to initiate legal proceedings against you." Defendants did not refer Plaintiff's matter to any attorney, not to mention an attorney in her city and making threats that they did and that this fictitious attorney may be authorized to sue Plaintiff were brazen lies. Defendants' mass-produced letter is disseminated to countless consumers and Defendants have no knowledge of the names of attorneys in all of their cities, much less can have been in contact with them.

F.      Equally deceitful in the August 19, 2013 letter was the statement, "As a result [of this suit], the principal balance could be increased by the addition of interest, court costs and possibly, attorney's fees."   Defendants are well aware that this is a completely fallacious representation and that "interest," "court costs" and "attorney's fees" can only be increased by a judgment, not a lawsuit.   These bogus threats and misinformation are made as part of an unscrupulous scheme on Defendants' part to deceive and mislead consumers.

G.      Defendants instructed employees in general and "Sam Gardner" in particular, to represent Defendants under various guises, titles and companies. When Plaintiff called SIEGEL's law firm, she was informed that their employee, Sam Gardner, was handling her matter. Sam Gardner contacted Plaintiff on numerous occasions, by telephone, to deceive her into providing her e-mail address, by e-mail dated August 13, 2013, pretending that she had requested the credit card form he attached under letter designated from NETWORK and signed "Sam Gardner, Collection Associate," by letter dated August 14, 2013 designated from NETWORK wherein he signed his name, "Sam Gardner, Collection Specialist" and by letter under Defendant's named letterhead wherein he signed his name, "Sam Gardner, Agent's Representative."

H.      Sending letters pretending to be from a law firm but having no official legal masthead, only the name of a law firm and address and contact information of a debt collector typed via word processing in the same font as the rest of the letter, a letter which bore the name of a supposed senior partner in a law firm and adding the ersatz caveat, "dictated but not read" beneath, followed by the name of Defendant's employee, "Sam Gardner," purporting to be "Agent's representative."

H.     Defendants' representative, "Bob," in his efforts to dissuade Plaintiff from seeking information which he well knew did not exist, (namely, the attorney in her city to whom her matter was supposedly referred by Defendants), stated, "It looks like at one time you wanted to resolve it because you had an e-mail---I mean you had a credit card form sent over to you, so okay then why---because that's going to be brought up in--- you know, as evidence so why would you want to be sued?" Nothing could be more brazenly fallacious than the fiction that Plaintiff's request was going to be "brought up in evidence," not to mention that Plaintiff would be sued.

46.     15 USC §1692 e(2) prohibits a debt collector from making the false representation of the character, amount, or legal status of any debt.

47.     Defendants' letter dated August 19, 2013, by stating, "With the consent of my client, I am referring this matter to legal counsel in your city, who may be authorized to initiate legal proceedings against you" and "…please contact me before you are served with legal process," are making baseless, fictitious and patently dishonest representations about the legal status of consumer debt and are in obvious violation of 15 USC §1692 e(2).

48.     15 USC §1692 e(3) prohibits a debt collector from making the false representation or implication that any individual is an attorney or that any communication is from an attorney.

49.     Defendants violated 15 USC §1692 e (3) by creating, mass producing and disseminating a letter, specifically the letter sent to Plaintiff dated August 19, 2013, which purported to be from a law firm and was signed deceptively and misleadingly by "EDWIN B. SIEGEL, ATTORNEY AT LAW, with the ersatz caveat, "Dictated but not

read" as well as "Sam Gardner, Agent's Representative" and not only are the addresses

for both Defendants identical, but as the Court can plainly see listed on Defendant

NETWORK's letterhead  (Exhibit "B" attached) and Defendant SIEGEL's letterhead

(Exhibit "D" attached), the facsimile number (818) 593-2180 is the same. In fact, the

letter masquerading as a legal communication and informing consumers that legal

action will be taken "in your city" is bogus and created deliberately to deceive, mislead

and dupe consumers into cooperating with Defendants' debt collection activities.

Furthermore, when Plaintiff placed a call on August 19, 2013 to the telephone number

provided on Defendants' letter from SIEGEL, Plaintiff was told that she had to speak to

Mr. Gardner of NETWORK. When Plaintiff asked if Mr. Gardner was an attorney,

SIEGEL's representative replied that "He is the person that is taking care of your claim.

He can help you whatever you need to get help in." Plaintiff responded, "But you said

that the case was going to be referred over to a local counsel in my city – was it

referred?" SIEGEL's representative replied, "You have to speak to him." The

Defendants in their letter to Plaintiff from NETWORK dated August 14, 2013, quoted

California's Rosenthal Civil Code § 1788 et seq.  Defendants might have done well to

review their own State's Rosenthal Civil Code, specifically, § 1788.16, which affirms: "It

is unlawful, with respect to attempted collection of a consumer debt, for a debt collector,

creditor, or an attorney, to send a communication which simulates legal or judicial

process or which gives the appearance of being authorized, issued, or approved by a

governmental agency or attorney when it is not.  Any violation of the provisions of this

section is a misdemeanor punishable by imprisonment in the county jail not exceeding

six months, or by a fine not exceeding two thousand five hundred dollars ($2,500) or by

both."

50.    15 USC §1692 e (5) prohibits a debt collector from making a threat to take any action that cannot legally be taken or that is not intended to be taken.

51.    In flagrant violation of 15 USC §1692 e (5), Defendants colluded together to prepare a mass-produced form letter dated August 19, 2013 on mock legal letterhead purporting to be from SIEGEL, a law firm, but which was from NETWORK debt collectors, with spurious statements including, "With the consent of my client, I am referring this matter to legal counsel in your city."  Lest the Court be in any doubt as to the fallacy of this fictitious claim that Defendants had the remotest intention of taking any such action, they need only listen to Plaintiff's telephone conversation with Defendants' employee, "Bob," who, having been caught in Defendants' lies, became increasingly more desperate as Plaintiff requested information about the identity of this invented legal counsel in her city, resorting to one tactic after another, including threats, to deter her from her apparent willingness to have her matter referred to local legal counsel.

52.    15 USC §1692 e(14) prohibits a debt collector from the use of any business, company, or organization name other than the true name of the debt collector's business, company or organization.

53.    Plaintiff received three letters from Defendants signed respectively, "Sam Gardner, Collection Associate," "Sam Gardner, Collection Specialist" and, on Law Firm letterhead, "Sam Gardner, Agent's Representative," evidencing Defendants cooperation and collusion in allowing NETWORK to issue written communications to consumers purporting to be SIEGEL in order to create the false impression that the status of their

debt was ripe for prosecution and that legal action was imminent.

54.     15 USC §1692 f – preface prohibits a debt collector from using any unfair or unconscionable means in connection with the collection of a debt.

55.     The Defendants violated 15 USC §1692 f - preface by colluding together to devise an unfair and unconscionable and unscrupulous scheme to deceive consumers. The Defendants used their employee, "Sam Gardner," and presumably other employees, to communicate by e-mail, letter and telephone with consumers in such a way that consumers were unable to discern whether Mr. Gardner represented NETWORK or Defendant, was a debt collection company or a law firm. The Defendants' pre-arranged scheme involved a two part process whereby first Defendants sent mass-produced written communications to consumers on letterhead attributed to NETWORK, demanding payment in full of a debt with veiled inferences such as the necessity to "enforce recovery," in addition to electronic communications which were obtained by deceit. Defendants then followed up this mailing to consumers with another letter on mock letterhead attributed to SIEGEL, claiming that although Defendants were not in the same State in which the consumer resided, Defendants were referring the consumer's matter to an attorney whose office was not merely in their State, but *in their city* and this attorney "may be authorized to initiate legal proceedings against you."  Defendants' unfair scheme was devised to create anxiety, distress and fear of legal action in the furtherance of Defendants' reprehensible debt collection practices.  These unfair and unconscionable practices included, but are not limited to:

         A.     Sending an electronic communication to Plaintiff at her place of employment which disclosed that she was being contacted by a debt collector regarding a

debt and then deliberately concealing a warning of confidentiality in the third paragraph, unfairly and unconscionably situated on the page so that it cannot be read unless the reader first sees the information referred to as confidential.

        B.    Sending Plaintiff a letter dated August 19, 2013 which neglected to include all required disclosures regarding consumers' rights to dispute within 30 days pursuant to 15 USC §1692 g (a) (4) which provides consumers with notification of their rights to avail themselves of copies of possible judgments against them which presumably support Defendant's position and which would assist consumers in assessing how to proceed with regard to Defendant's debt notifications. In furtherance of their debt collection efforts, Defendants' neglect to relate the right to this vital piece of evidence unfairly and thus, unconscionably denies consumers information to which they are fairly entitled.

        C.    Stating in Defendant's letter of August 19, 2013, "If you have an attorney, have him/her contact me immediately. I will be more than happy to discuss this matter with you or your attorney. In either case, please contact me before you are served with legal process."  Not only has Defendant shown through Plaintiff's telephone contacts with Defendants' employee ("Bob"), that rather than being "more than happy"  Defendant becomes irate when Plaintiff wishes to discuss her matter, but Defendants' more egregious phrase is, "please contact me before you are served with legal process." How would any consumer recipient of such an instruction begin to determine when "before you are served with legal process" could be?

        D.    Following the above paragraph with, "Please direct your correspondence and communications directly to my client at (818) 360-6697 [followed by address] in order to resolve this matter."  Defendants, in the same letter, direct a consumer

or a consumer's attorney to "contact me immediately" and in the next paragraph, instructs, "Please direct your correspondence and communications directly to my client." Defendants sign this letter "Edwin B. Siegel, Attorney at Law, dictated but not read," and expects the Court to believe that such contradictory and confusing information was "dictated" by Defendant partner in SIEGEL's law firm.  Defendants' letter was written by a debt collector, not an attorney.

        E.       Instructing and/or allowing "Bob" to do everything in his power to avoid complying with Plaintiff's request for the name of the attorney in her city to whom Defendants claimed to refer her matter, unconscionably implying that Plaintiff was, among other things, irrational or making unusual requests and ignorant for wanting to be sued. "Bob" continually and unfairly resorted to insults rather than supply the requested information, a clear and obvious example of the unconscionable and unfair methods and means that Defendants employ in their debt collection practices.

    56.   Defendants' further violations of 15 USC §1692 f - preface include, but are not limited to, the following:

        A.       Unfairly instructing "Sam Gardner" to telephone Plaintiff to ask for her e-mail address and say that Defendants needed it "for their files" and then sending her a letter and "credit card form" stating that she requested it.

        B.       Sending an electronic communication to Plaintiff at her place of employment which disclosed that she was being contacted by a debt collector regarding a debt and then deliberately concealing a warning of confidentiality in the third paragraph, unfairly and unconscionably situated on the page so that it cannot be read unless the reader first sees the information referred to as confidential.

C.      Sending Plaintiff a letter dated August 19, 2013 which neglected to include all required disclosures regarding consumers' rights to dispute within 30 days pursuant to 15 USC §1692 g (a) (4) which provides consumers with notification of their rights to avail themselves of copies of possible judgments against them which presumably support Defendants' position and which would assist consumers in assessing how to proceed with regard to Defendants' debt notifications. In furtherance of their debt collection efforts, Defendants' neglect to relate the right to this vital piece of evidence unfairly and thus, unconscionably denies consumers information to which they are fairly entitled.

D.      Instructing and/or allowing "Bob" to do everything in his power to avoid complying with Plaintiff's request for the name of the attorney in her city to whom Defendants claimed to refer her matter, unconscionably implying that Plaintiff was, among other things, irrational or making unusual requests and ignorant for wanting to be sued. "Bob" continually and unfairly attempted to convince Plaintiff that if she didn't make payment there and then rather than request information, she would be sued, behavior that is a clear and obvious example of the unconscionable and unfair methods and means that Defendants employ in their debt collection practices.

57.     Pursuant to 15 USC §1692 g (a) (3), (4) and (5), in an initial communication with a consumer, or within five days after making initial contact, a debt collector is required to send written notice informing the consumer that: (3) the subject debt will be considered valid unless they are contacted by the consumer within 30 days stating otherwise; (4) if the consumer writes to the debt collector within 30 days to dispute the alleged debt, the debt collector will obtain verification or copy of judgment against the consumer and mail same to the consumer; and, (5) at the consumer's written request within the 30-day period, the debt

collector will provide the name and address of the original creditor.

58.     In Defendant's letter to Plaintiff and consumers dated August 19, Defendant compiled with (3) and (5) of the aforementioned statute but with respect to subparagraph (4), failed to mention the right of consumers and Plaintiff to request and receive in the mail from Defendant "verification or copy of judgment against the consumer," thereby violating 15 USC §1692 g (a) (4).

59.     As a result of Defendant's actions, Plaintiff suffered shame and distress and according to 15 USC §1692k(a)(1), Defendant is liable to Plaintiff for damages sustained because of Defendant's failure to comply with §1692 et seq. of Title 15 of the United States Code (the FDCPA) and other violations of the FDCPA.

## DEMAND FOR TRIAL BY JURY

60.     Plaintiff hereby respectfully requests a trial by jury for all claims and issues in its Complaint to which it is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from the Defendants as follows:

A.     For actual damages provided and pursuant to 15 USC §1692k(a)(1);

B.     For statutory damages provided and pursuant to 15 USC §1692k(2)(A);

C.     For statutory damages provided and pursuant to 15 USC §1692k(2)(B);

D.     For attorneys' fees and costs provided and pursuant to 15 USC §1692k(a)(3);

E.      A declaration that the Defendant's practices violated the FDCPA;

F.      For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

Dated:      New York, New York
            March 18, 2014


                        Respectfully submitted,


                        By: _____*Alan J. Sasson*_____
                        Alan J. Sasson (AS8642), Esq.
                        LAW OFFICE OF ALAN J. SASSON, P.C.
                        Attorney for Plaintiff
                        1669 East 12th Street
                        Brooklyn, New York 11229
                        (718) 339-0856
                        *Attorney for the Plaintiff*

To:   NETWORK COMMERCIAL SERVICE, INC.
       6355 Topanga Canyon Boulevard, Suite 255
       Woodland Hills, CA 91367.

       LAW OFFICES OF SIEGEL & SIEGEL
       6355 Topanga Canyon Boulevard, Suite 255
       Woodland Hills, CA 91367

       *(Via Prescribed Service)*

       Clerk,
       United States District Court, Southern District of New York
       *(For Filing Purposes)*